BELLOWS v. UNITED ELECTRICAL MFG. CO. et al.

(Circuit Court of Appeals, Second Circuit. March 10, 1908.)

No. 163.

PATENTS—VALIDITY AND INFRINGEMENT—TELEGRAPH KEY.

The Coffe patent, No. 812,183, for an improvement in telegraph keys, was not anticipated, and discloses invention of a meritorious character, which entitles the patentee to the benefit of the doctrine of equivalents. Claim 11 also *held* infringed. Claims 12, 13, 16, 18, 19, 21, 23, 25, 26, 27, and 28, all of which contain as an element what is known as a "finger mechanism," *held* not infringed.

Appeal from the Circuit Court of the United States for the Southern District of New York.

This cause comes here upon appeal from a decree dismissing a bill of complaint in a patent infringement suit. The patent involved is No. 812,183, issued February 13, 1906, on application filed January 11, 1904, to William O. Coffe for improvement in telegraph keys. The claims in controversy are 11, 12, 13, 16, 18, 19, 21, 23, 25, 26, 27, and 28.

For opinion below, see 153 Fed. 588.

Lyman Ward (E. L. Thurston, of counsel), for appellant.

Kerr, Page & Cooper (Parker W. Page and Thomas B. Kerr, of counsel), for appellees.

Maurice P. Davidson (Alfred Yankauer, of counsel), for creditor respondents.

Douglas & Minton, for creditors.

Before LACOMBE, WARD, and NOYES, Circuit Judges.

LACOMBE, Circuit Judge. The devices of the patent have been obscured by a multitudinous number of claims—28 altogether—most of them wholly superfluous and the result of a long controversy with the Patent Office on matters of detail; the inventor presented himself originally with 18 claims. The main invention, however, is not difficult of comprehension, and since the entire prior art is embodied in a single patent the case is really a very simple one.

The original Morse key consisted of a pivoted lever carrying a button or finger piece at one end, and was worked solely by the hand of the operator, who, grasping the button with his fingers, oscillated the lever into and out of contact with a suitable terminal, thereby sending impulses of current over a telegraph line. The Morse code consists of what are called "dashes and dots." A dash is produced by holding

the lever in contact to close one circuit for a brief interval; dots are produced by bringing the lever rapidly in and out of contact to close another circuit. It is not necessary to set forth details. Suffice it to say that the muscles and nerves of the operator's arm were subjected to great strain during prolonged hours of work, many operators becoming victims of what is known as "telegrapher's paralysis." To remedy this, defendant Martin devised a transmitter, which would relieve the operator of at least a part of this severe strain. That device is shown in patent to Martin, No. 732,648, June 30, 1903. A finger piece is maintained in a normal position midway between two contact stops, and is movable horizontally to right and left. If moved to the left and against the contact stop on that side the line is closed, and a current allowed to flow as long as such contact continues, thus producing a "dash" as with the ordinary key. If the finger piece is moved to the right into contact with the contact stop on that side it closes the circuit of a small electro-magnet. This magnet is provided with a pivoted armature; the tip end of such pivoted armature contacts with the tip end of a pivoted pendulum, the two being normally in contact, springs and stop-pieces being so arranged as to limit movement and restore parts to place. These contacting pivoted structures are in a circuit, formed when the key piece is moved to the right, through which circuit go the "dot" impulses. By reason of the fact that as soon as this circuit is established the small electro-magnet comes into play, the armature is at once attracted to the magnet. The armature, as soon as its movement is stopped by contact with the pole face of the magnet, kicks the pendulum out of contact with itself, thereby breaking the circuit; attraction by the electro-magnet at once ceases and a spring retracts the armature. Immediately thereafter, returning under spring influence from the point to which it was kicked, the tip of the pendulum again contacts with the tip of the armature, circuit is restored and the operation is repeated. This action continues automatically so long as the finger piece is held to the right-hand contact. The result is a succession of dot impulses, produced not by the rapid and incessant movement of the operator's hand, but the single act of pushing the finger piece to the right. This ingenious little device saved an enormous amount of strain; it eliminated much more than half of the operator's hand movements. So far as the record shows, Martin's device was developed in a barren field; no work in the same direction, even unsuccessful work, by other patentees is disclosed. It is conceded on both sides that his patent discloses a highly meritorious invention.

Meritorious, however, though it was, it apparently had its defects. It was complicated, which added to its cost, and, it may be, impaired its reliability. From the above description it is evident that an electro-magnet or magnetic engine is an essential element of the instrument, and it was desirable to simplify it by eliminating that element, thus making it a motorless, nonelectrical, or, as complainant expresses it, a self-contained, instrument. The specification of the patent in suit says:

"The mechanisms heretofore used for effecting this result have comprised electro-magnets, batteries, switches, adjustable springs, and other features

making a complex and expensive apparatus and one requiring continual adjustment as the battery runs down. The object of [my] invention is to provide a mechanism to accomplish the same result while doing away with the electro-magnets and batteries, the construction being at once simple, cheap, durable, and not liable to get out of order."

We do not find it necessary to describe the details of Coffe's structure. It includes in combination: (1) A vibrator which is of such character that it has the inherent capacity for continued vibration when once its vibration is initiated, and (2) a lever capable of being controlled by an operator and having the threefold function (a) of imparting to the vibrator the energy for initiating its vibration, (b) of moving said vibrator to and holding it in an idle position in which it cannot vibrate, and (c) of releasing it so as to permit it to vibrate effectively. The vibrator of the prior Martin patent is an electro-magnetic vibrator, and is controlled electrically by the magnet. The vibrator of the Coffe patent is a mechanical vibrator, and is controlled mechanically by the lever. So far as the record shows Coffe was the first to substitute this mechanical control for the magnetic control, no work in the same direction, even unsuccessful work, by other patentees is disclosed. Coffe's is the first self-contained instrument of this class, where the vibrator is controlled mechanically without the use of an electro-magnet or other subsidiary motor. Martin has testified at great length as to his experiments and productions in the field of telegraph-key mechanism, but we find his testimony unpersuasive to any conclusion adverse to Coffe. Wherever Martin's testimony is supported by sketches, or experimental models, or the statements of other witnesses he seems to have been working along the lines of his first device with a subsidiary motor as an element—electro-magnet, clockwork or small caloric engine. In our opinion the device of the patent in suit is a meritorious invention, and the patentee is entitled to the benefit of the doctrine of equivalents.

Besides the combination of vibrator and lever above set forth the patent discloses various other parts, the details of which need not be set forth. All the claims in controversy, except No. 11, include as an element what is known as the "finger mechanism"; we find in defendant's device such a departure from that mechanism as precludes us from holding those claims to be infringed. It will be necessary therefore to discuss claim 11 only, which reads as follows:

"11. In a telegraph transmitter, in combination, a vibrator adapted to make and break an electrical circuit, a key-lever for controlling the operation of said vibrator, and an independent circuit controller carried by said lever."

The "independent circuit-controller carried by said lever" is the contact point through which circuit is closed when the finger piece is moved to effect a "dash" impulse. We do not find in the record of proceedings in the Patent Office anything which would require a construction of this claim other than such as would be put upon its very plain language read in connection with the description of invention set forth in the specifications.

It is contended by the defendants that it is so broad as to cover the device of the prior Martin patent, but we think such contention is whol-

ly unfounded. The very object of the invention was to avoid control of the vibrator by the use of electro-magnets and batteries and to substitute therefor a purely mechanical control by the lever itself. To interpret the words "a key-lever for controlling the operation of the vibrator" so broadly as to cover "an electro-magnet for controlling the operation of the vibrator," would be to strain their meaning far beyond what they were used to express. The complainant's "particular embodiment" of the invention described in the specification discloses a vibrator which consists of a pendulum hanging vertically from a standard. When released from control by the lever it swings to and fro, as pendulums do, bringing a leaf spring at its lower end into and out of engagement with a contact point. When the spring is in engagement with such point a circuit is established through which impulses are sent, and, since contact is being made and broken quickly through the swing of the pendulum, these impulses are the short ones known as "dots." When enough dots have been sent, the operator ceases to hold the finger to the right, and a spring returns the lever to normal position; that is, with its end pressed sideways against the pendulum holding the latter at rest with its contacting leaf spring engaged with a dead stop-piece opposite to the contact point with which the spring made and broke connection when in motion. The act of thus moving the pendulum to one side with its depending spring pressing against the stop-piece imparts a tendency to begin vibration (under impulse of the spring) as soon as the lever is moved out of normal position. At the finger end of the lever there is a contact point, so arranged that when the operator moves the finger piece, it engages with another contact point establishing a circuit, independent of the circuit through which "dot" impulses are sent by the oscillating pendulum. This independent circuit carries the "dash" impulses, and the "contact point in the finger piece controls it. In normal position both circuits are open.

In defendant's apparatus the vibrator is hung horizontally instead of vertically. It is, mechanically speaking, a reed. The lever is cut off a short distance beyond the pivot and is prolonged with a short length of flexible blade spring, beyond which extends a rod with an adjustable weight. When the lever moving up to and against a stop-piece is suddenly stopped, the weighted rod beyond the blade spring vibrates as a pendulum does; such a reed is a well-known mechanical equivalent of the pendulum. When set in motion by the movement of the lever, the horizontal oscillations of the weighted rod bring a leaf spring at its side into and out of engagement with a contact point. When the spring is in engagement with such point a circuit is established through which impulses are sent, and, since contact is being made and broken quickly through the oscillations of the weighted rod, these impulses are the short ones known as dots. When enough of them have been sent, the operator ceases to hold the finger end of the lever to the right and a spring returns the lever to normal, which is a position so far from the contact point that the leaf spring can no longer make circuit, and the lever being at rest vibration soon ceases. It is the movement of the lever in one direction which imparts vibration through its being driven against a stop-piece, while the return of the lever puts the vi-

brator out of action. The operation of the vibrator is controlled by the key-lever and in substantially the same way as in the patent. At the finger end of the lever there is a contact point so arranged that when the operator moves the finger piece it engages with another contact point establishing a circuit independent of the circuit through which dot impulses are sent by the oscillating reed. This independent circuit carries the dash impulses, and the contact device on the finger piece controls it. There are differences in the structure of the finger end of the lever. The defendant's device includes a supplementary key-lever mounted on the main key-lever and having a very slight play; but, construing this claim as we do, we regard such differences as immaterial details. Both combinations accomplish the same results in substantially the same way and by the use of well-known mechanical equivalents. Infringement of claim 11 is proved, but since the appellant has failed as to the other claims there can be no costs of this appeal.

Decree reversed and cause remanded, with instructions to decree in conformity with this opinion, but without costs.